IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

KATELYN WILLS, )
 )
            Plaintiff, )
 )
    v. ) Case No. 5:22-cv-06141-RK
 )
BRETT STILES, LM GENERAL )
INSURANCE COMPANY, )
 )
           Defendants. )

# ORDER

This case arises from a motor vehicle collision between Plaintiff Katelyn Wills and Defendant Brett Stiles in September 2016. (Doc. 1-6 at ¶ 7.) In May 2020, Plaintiff filed a lawsuit against Defendant Stiles in Missouri state court for negligence, which was tried to a jury in May 2022, resulting in a verdict in favor of Plaintiff and against Defendant Stiles in the amount of $625,000, plus costs and post-judgement interest. (*Id.* at ¶¶ 9-12.) Defendant LM General Insurance Company ("LM") defended Defendant Stiles in the state negligence case without a reservation of rights. (*Id.* at ¶ 18.)

In this action, Plaintiff brings garnishment and equitable garnishment claims seeking to have the insurance policy issued by Defendant LM to Defendant Stiles applied to the judgment Plaintiff obtained against Defendant Stiles. (*Id.* at ¶ 19.) This case was filed in the Circuit Court of Buchanan County, Missouri on August 24, 2022. (Doc. 1-6.) Defendant Stiles filed an amended answer and crossclaim for bad faith refusal/failure to settle on October 13, 2022. (Doc. 1-7, ¶ 8.) LM filed an amended answer and counterclaims for abuse of process and wrongful garnishment on November 7, 2022, claiming that Plaintiff is not seeking to obtain insurance proceeds owed by LM under the relevant policy for the underlying judgment, as LM has already paid all insurance proceeds capable of garnishment, but is instead seeking a collateral result that garnishment is not intended to effect. (Doc. 1-2.) On December 7, 2022, Plaintiff filed a "reply to Defendant LM General Insurance Company's affirmative defenses and Plaintiff's answer to Defendant LM General Insurance Company's Counterclaims." (Doc. 1-3.) That filing also contains "Counterclaims" against Defendant LM for bad faith and attachment. (*Id.*) Defendant LM removed the case from state court to federal court on December 28, 2022. (Doc. 1.)

Before the Court are (1) Plaintiff's motion to remand (Doc. 8), which is fully briefed (Docs. 12, 15); (2) Defendant Brett Stiles' motion to remand (Doc. 11), which Defendant LM opposes (Doc. 13); and (3) Defendant LM's motion to dismiss Plaintiff's counterclaims (Doc. 5), which is fully briefed (Docs. 6, 10, 14). For the reasons below, the motions for remand are **DENIED**, Defendant LM's motion to dismiss Plaintiff's counterclaims is **GRANTED**, and Plaintiff's claims against Defendant Brett Stiles are **DISMISSED**.

I. **Legal Standards**

A. **Federal Jurisdiction**

Defendant LM, who independently invokes this Court's jurisdiction, bears the burden of proving that all prerequisites to jurisdiction are satisfied. *Green v. Ameritrade, Inc.*, 279 F.3d 590, 596 (8th Cir. 2002). "A defendant may remove a state law claim to federal court only if the action originally could have been filed there." *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010) (citation omitted).

Diversity jurisdiction under 28 U.S.C. § 1332(a) requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants. "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *Id.* at 620 (citation omitted).

B. **Timeliness of Removal**

"In addition to the substantive requirements for removal to federal court, the party seeking removal must comply with certain procedural requirements." *Lovins-Kapler v. Teva Pharms., USA, Inc.*, No. 11-0961-CV-W-SOW, 2012 WL 208321, at *2 (W.D. Mo. Jan. 24, 2012). One of these requirements is a time limit for removal. In particular, the defendant must file a Notice of Removal within thirty days of being served with the initial pleading. 28 U.S.C. § 1446(b). However,

> [i]f the suit is not removable at the time of filing but becomes removable later, the notice of removal must be filed within 30 days after the defendant's receipt, "through service or otherwise," of a copy of an amended pleading, motion, order, or other paper from which the defendant can ascertain that the case has become removable.

*Lovins-Kapler*, 2012 WL 208321, at *2 (quoting § 1446(b)).

### C. Fraudulent Joinder

Fraudulent joinder – the filing of a "frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal" – acts as an exception to the complete diversity rule. *Prempro*, 591 F.3d at 620. Stated differently, "a plaintiff cannot defeat a defendant's 'right of removal' by fraudulently joining a defendant who has 'no real connection with the controversy.'" *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 976 (8th Cir. 2011) (citation omitted).

Whether a non-diverse party has been fraudulently joined such that the federal court may nonetheless obtain subject matter jurisdiction depends on "whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved." *Wilkinson v. Shackelford*, 478 F.3d 957, 963 (8th Cir. 2007) (citation and quotation marks omitted). The Eighth Circuit has explained that the "reasonableness of the basis underlying the state claim" is critical to this inquiry. *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003). In *Filla*, the Eighth Circuit explained the critical difference between circumstances in which courts should find a non-diverse defendant was fraudulently joined or not: first, "[w]here applicable state precedent precludes the existence of a cause of action against a defendant, joinder is fraudulent" but "if there is a 'colorable' cause of action – that is, if the state law might impose liability on the resident defendant under the facts alleged [or, in other words, if there exists a reasonable basis in fact and law supporting the claim] – then there is no fraudulent joinder." *Id.* (citations and footnote omitted); *see also Hayes v. Rad Transport, Inc.*, No. 10-0787-CV-W-ODS, 2010 WL 3807052, at *2 (W.D. Mo. Sept. 23, 2010) (noting, "[t]he Court's task is to determine whether the claim clearly lacks any basis – that is, if it is barred as a matter of law or if it is based on facts that clearly provide no basis for liability").

## II. Discussion

### A. Defendant LM Timely Filed for Removal

Plaintiff argues remand is warranted because Defendant LM's removal was untimely. The general rule, in § 1446(b)(1), is that a defendant's notice of removal must be filed within 30 days of service. *Johnson v. Primal Vantage Co., Inc.*, 4:20-CV-005020-BCW, 2020 WL 8366985, at *2 (W.D. Mo. April 27, 2020) (citing *Davis Neurology PA v. DoctorDirectory.com LLC*, 896 F.3d 872, 873 (8th Cir. 2018)). In this case, Plaintiff's original pleading was served on Defendants LM and Stiles on September 9, 2022. Under the general rule, Defendant LM had 30 days, or until October 9, 2022, to remove the case. Defendant LM did not remove this case from state court into

3

federal court until December 28, 2022. (Doc. 1.) Therefore, under the general rule of §1446(b)(1), this case was not timely removed.

Consequently, the Court considers whether removal was timely under § 1446(b)(3). If the initial pleading is not removable, § 1446(b)(3) allows for removal within 30 days of service of an amended pleading or other paper "from which it may first be ascertained" that the case is removable. Defendant LM contends that they could not "unambiguously ascertain" whether Plaintiff was seeking recovery in excess of the insurance policy until December 7, 2022, and so that is when the 30-day time limit under § 1446(b)(3) began to run.

In support of its argument, Defendant LM cites *Gibson v. Clean Harbors Environmental Services, Inc.*, 840 F. 3d 515, 519 (8th Cir. 2016), which states that:

> in the Class Action Fairness Act (CAFA) context, the thirty-day removal period set forth in § 1446(b)(3) does not begin to run until the defendant receives from the plaintiff an amended pleading, motion, order, or other paper "from which the defendant can unambiguously ascertain" that the CAFA jurisdictional requirements have been satisfied.

*Id*. (quoting *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 285 (6th Cir. 2016)). Defendant also cites *Atwell v. Boston Scientific Corp.*, 740 F.3d 1160, 1162 (8th Cir. 2013). In *Atwell*, the Eighth Circuit stated that the 30-day time limit under § 1443(b) begins running when a plaintiff "explicitly discloses" they are seeking a remedy that affords a basis for federal jurisdiction. *Id*. While *Gibson* and *Atwell* were analyzing CAFA cases and applying CAFA law, the Eighth Circuit has also held, outside the CAFA context, that the 30-day time limit of § 1443(b) only begins to run when a plaintiff's pleading "explicitly discloses" that the amount of damages the plaintiff seeks is in excess of the federal jurisdictional amount. *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 974 (8th Cir. 2011); *In re Willis*, 228 F.3d 896, 897 (8th Cir. 2000) ("The thirty-day time limit of section 1446(b) begins running upon receipt of the initial complaint only when the complaint explicitly discloses the plaintiff is seeking damages in excess of the federal jurisdictional amount.")

Therefore, under § 1443(b)(3), if Plaintiff's pleadings did not "explicitly disclose" that removal was possible until Plaintiff's December 7, 2022 reply to LM's counterclaim, removal would be permitted until January 6, 2023, which would mean Defendant LM's notice of removal (filed December 28, 2022) was timely. After careful review, the Court finds that it was not explicitly disclosed that the case was removable upon the filing of Plaintiff's initial complaint, but

4

rather the removability of the case only became clear later when Plaintiff filed its December 7, 2022 reply to LM's counterclaim.

Here, Plaintiff's complaint seeks "to have the insurance policy issued by Defendant LM General Insurance Company to Defendant Stiles applied to the judgment against Ms. Stiles, including pre-judgment interest and post-judgment interest." (Doc. 1-6 at 4.) Plaintiff served her complaint seeking such garnishment on Defendant LM on September 9, 2022. (Doc. 8 at 4.) The policy limit of the relevant policy was $100,000, and the policy provided for supplementary payments relating to post-judgment and pre-judgment interest awarded against an insured. The underlying judgment awarded post-judgment interest but not pre-judgment interest. On August 23, 2022, LM tendered the $100,000 policy limit to Plaintiff, then on September 20, 2022, tendered $9,965.75 in post-judgment interest as agreed to by Plaintiff. On October 7, 2022, LM tendered $3,368.36 in agreed-to costs from the underlying lawsuit.

On October 9, 2022, 30 days after Defendant LM was served, the amount in controversy was no more than $13,334.11 based on the insurance policy and the underlying judgment. This sum does not meet the federal jurisdictional amount in controversy requirement. It was not until December 7, 2022, when Plaintiff filed her reply to Defendant LM's counterclaims for abuse of process and wrongful garnishment that Plaintiff "explicitly disclosed" that she was seeking an amount above the threshold for federal diversity jurisdiction, when she asserted

> LM is responsible for paying the entire judgment, plus interest accrued thereon, because of its bad faith refusal to settle claims against its insured, Defendant/Cross-Claim Plaintiff Brett Stiles . . . . Plaintiff is under no obligation to dismiss her garnishment claim because LM is still liable to pay more than the limits of liability under its policy due to its bad faith refusal to settle.

(Doc. 1-3 at 7.) Because Plaintiff did not explicitly disclose a basis for federal jurisdiction until her December 7, 2022 filing, removal was permitted until January 6, 2023, which means Defendant LM's notice of removal filed December 28, 2022, was timely.

### B. Defendant Stiles is Fraudulently Joined

Defendant LM argues that Defendant Stiles, the non-diverse party, is fraudulently joined because as a matter of law, Defendant Stiles (and LM) cannot be liable for garnishment.

Missouri law generally requires that an insured defendant be joined in a garnishment action against his or her insurer where a final judgment has been entered, as follows:

> Upon the recovery of a final judgment against any person . . . for loss or damage on account of bodily injury . . . if the defendant in such action was insured against

5

said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money, provided for in the contract of insurance between the insurance company . . . and the defendant, applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment.

§ 379.200, RSMo. In interpreting § 379.200, the Eighth Circuit has held,

> [b]ecause the insurer is entitled under *McNeal* [*v. Manchester Insurance & Indemnity Company*, 540 S.W.2d 113, 119 (Mo. App. 1976)] to assert any defenses it has against the insured, the Missouri legislature had good reason to require that the judgment debtor be joined in the statutory action, even if that action does not expose the judgment debtor to any risk of additional liability.

*Glover v. State Farm Fire and Cas. Co.*, 984 F.2d 259, 261 (8th Cir. 1993).

In *Glover*, the insurer denied coverage and the plaintiff and the insured defendant entered into a settlement agreement providing that the plaintiff would not levy execution except against the insured defendant's insurer. 984 F.2d at 260. In *Price v. Young America Ins. Co.*, No. 20-00149-CV-W-HFS, 2020 WL 4470443 (W.D. Mo. Aug. 4, 2020), the court rejected an insurer's argument that the insurer was fraudulently joined in an equitable garnishment action to the extent that, in part, the plaintiff sought "relief from [the insurer] far in excess of the policy limit." *Id.* at *2-3. The court held that there was no fraudulent joinder as a plaintiff can pursue an equitable garnishment claim, in addition to claims arising from assignment of the insured defendant's contractual rights, such as bad faith failure to defend. *Id.* at *3. The court further noted it is not uncommon for plaintiffs to bring equitable garnishment claims along with claims for breach of contract. *Id.* As in *Glover*, the plaintiffs in *Price* had entered a settlement agreement in which they agreed not to execute against the insured defendant's assets in case of a judgment against her in the underlying case in exchange for the assignment of any cause of action the insured defendant had against her insurer arising from insurer's handling of the claims made in the underlying case including any alleged failure to settle. 2020 WL 4470443, at *1.

Here, there is no indication that Plaintiff and Defendant Stiles have entered into any settlement agreement or that Defendant Stiles has otherwise assigned any claim against Defendant LM to Plaintiff. Absent such agreement or assignment, Plaintiff has no basis for a claim pursuant to § 379.200, which only allows a judgment creditor to "proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the

judgment" and not to recover amounts beyond "the insurance money." Here it appears to be undisputed that the insurance money has already been tendered to Plaintiff.

Further, the Court is not persuaded by Plaintiff's argument that as the injured party, she stands "in the shoes of the insured" in a garnishment proceeding, and as such is entitled to assert Defendant Stiles' bad faith claims against Defendant LM to recover extra-contractual damages in this proceeding. "[T]he garnishor may reach the indebtedness which the garnishee has a present obligation to pay to the judgment debtor at the time of service, and nothing beyond this." *Murray v. Murray*, 176 S.W.3d 713, 717 (Mo. Ct. App. 2005) (citing *Wenneker v. Physicians Multispecialty Group, Inc.*, 814 S.W.2d 294, 296 (Mo. banc 1991)). Even if there is a potential bad faith claim against LM, such claim has not been adjudicated and Defendant LM has no "present obligation" to pay any speculative future indebtedness that may arise from the adjudication of such claim to Defendant Stiles "at the time of service." Thus, even standing in the shoes of Defendant Stiles, Plaintiff is not entitled to garnishment on Defendant Stiles' unadjudicated bad faith claim.

Because the Court finds no reasonable basis in fact and law supporting Plaintiff's garnishment claim against Defendant Stiles, the Court concludes Defendant Stiles is fraudulently joined.

### C. Defendant LM's Citizenship Does Not Destroy Diversity

Title 28 U.S.C. § 1332(c)(1) provides in part that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." This provision makes LM a citizen of Illinois and Massachusetts. Title 28 U.S.C. § 1332(c)(1) also provides, in part, that "in any direct action against the insurer of a policy or contract of liability insurance, . . . to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen[.]"

Because Defendant Stiles is fraudulently joined, Plaintiff argues even in her absence Defendant LM is considered a Missouri resident for purposes of Plaintiff's § 379.200 claim because such claim is a direct action within the meaning of 28 U.S.C. § 1332(c)(1). However, the Eighth Circuit has squarely addressed this matter and arrived at the opposite conclusion: "A claim brought under section 379.200 is [] not a direct action under § 1332(c)(1)." *Russell v. Liberty Ins. Underwriters, Inc.*, 950 F.3d 997, 1002 (8th Cir. 2020). Furthermore, Plaintiff also brings a

7

traditional garnishment claim pursuant to § 525.240 and Missouri Supreme Court Rule 90, neither of which are direct actions under § 1332(c)(1), either. *Lancaster v. Am. and Foreign Ins. Co.*, 272 F.3d 1059, 1064 (8th Cir. 2001) (stating that "[a]n ordinary garnishment proceeding is not a direct action, but rather is ancillary to the underlying tort action.")

Because Plaintiff and Defendant LM are citizens of different states as to all Plaintiff's garnishment claims, diversity jurisdiction under § 1332 is not destroyed.

### D. Defendant LM's Motion to Dismiss Plaintiff's Counterclaims

Having concluded the Court has subject matter jurisdiction, the Court turns to Defendant LM's motion to dismiss Plaintiff's counterclaims. (Doc. 5.) Defendant LM argues that Plaintiff's "Counterclaims" for bad faith and attachment (1) are not permitted under the Federal Rules, which do not contemplate counterclaims to counterclaims, and (2) do not state a claim upon which relief can be granted. Defendant LM contends that Plaintiff, who is not a party to the subject insurance policy and was not assigned any bad faith claim from Defendant Stiles, has no standing to bring a bad faith claim. Defendant LM further asserts that Plaintiff has no claim for attachment because it is impossible as a matter of law for Defendant LM to be liable to Plaintiff in excess of the applicable insurance proceeds and that the attachment claim is facially moot under § 521.050, RSMo.

#### i. Plaintiff's "Counterclaims" are Not Permitted Under the Rules and Precedent

Some courts, including the district courts in the Eighth Circuit that have considered the validity of counterclaims to counterclaims, have allowed plaintiffs to file counterclaims in reply when such counterclaims are compulsory and in response to permissive counterclaims. *Lincoln Sav. Bank v. Open Sols., Inc.*, 956 F. Supp. 2d 1032, 1038 (N.D. Iowa 2013) (citing *Feed Mgmt. Sys., Inc. v. Brill,* 518 F.Supp.2d 1094, 1096 (D. Minn. 2007)). Rule 13 governing counterclaims provides that a compulsory counterclaim is:

> any claim that – at the time of its service – the pleader has against an opposing party if the claim:
>
> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
>
> (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed. R. Civ. P. 13(a). A permissive counterclaim, on the other hand, is "any claim that is not compulsory." Fed. R. Civ. P. 13(b).

The Court therefore must (1) determine whether Defendant LM's abuse of process and wrongful garnishment counterclaims arise out of the same transaction or occurrence as Plaintiff's equitable and traditional garnishment claims, and if they do not, (2) determine whether Plaintiff's "counterclaims" for bad faith and attachment arise out of the same transaction or occurrence as LM's abuse of process and wrongful garnishment counterclaims, and if they do not, (3) whether they may be nonetheless be permitted.

To determine whether a counterclaim arises out of the same transaction or occurrence as a claim, the Eighth Circuit has cited four tests. *Cochrane v. Iowa Beef Processors, Inc.*, 596 F.2d 254, 264 (8th Cir. 1979); *Tullos v. Parks*, 915 F .2d 1192, 1195 (8th Cir. 1990). Those four inquiries are whether:

> (1) the issues of fact and law raised by the claim and counterclaim are largely the same, (2) res judicata would bar a subsequent suit on the counterclaim, (3) substantially the same evidence supports/refutes the claim and counterclaim, and (4) there is any logical relation between the claim and the counterclaim.

*BOKF, N.A. v. BCP Land Co., LLC*, No. 6:14-CV-03025-MDH, 2015 WL 2354386, at *2 (W.D. Mo. May 15, 2015) (citing *Cochrane*, 596 F.2d at 263). In employing these tests, "the Eighth Circuit has found abuse of process counterclaims permissive where the alleged abuse of process is the commencement of the present lawsuit." *BOKF, N.A.*, 2015 WL 2354386, at *3 (citing *Cochrane*, 596 F.2d at 263 (holding legal abuse of process claim based on filing of lawsuit in Iowa was permissive in the Iowa lawsuit itself because the abuse of process claim did not arise from the same transaction or occurrence as the underlying claims in the Iowa lawsuit; "In no substantial sense can appellants' claims for relief for abuse of process be found to have arisen out of the alleged breach of contract by Bagley and out of the alleged breach of fiduciary duties by Bagley and Aarsen."); *Comidas Exquisitos, Inc. v. Carlos McGee's Mexican Cafe, Inc.*, 602 F. Supp. 191, 200 (S.D. Iowa 1985) *aff'd sub nom. Comidas Exquisitos, Inc. v. O'Malley & McGee's, Inc.*, 775 F.2d 260 (8th Cir. 1985) ("The Court can exercise ancillary jurisdiction over defendant's counterclaim only if it is compulsory . . . . However, defendant's counterclaim arises out of the prosecution of this action while the subject matter of plaintiff's claims is defendant's use of the

name 'Carlos McGee's.' Therefore, the Court cannot exercise ancillary jurisdiction over defendant's counterclaim.")).

### 1. Defendant LM's Counterclaims are Permissive

Here, Defendant LM's counterclaims for abuse of process and wrongful garnishment do not arise out of the same transaction or occurrence that is the subject matter of Plaintiff's claims. First, the issues of fact and law raised by Plaintiff's garnishment claims and Defendant LM's abuse of process and wrongful garnishment claims are not "largely the same." Defendant LM's counterclaims focus on the prosecution of this action while the subject matter of Plaintiff's garnishment claims involves interpreting and executing the judgment in the underlying lawsuit and interpreting and applying the insurance policy. Also the claims and counterclaims have different and dissimilar elements.

Second, res judicata would not bar subsequent claims for abuse of process and wrongful garnishment. "The focus of an abuse of process claim is not that the opposing party brought suit upon an unfounded claim but, rather, that suit was initiated for some collateral purpose." *BOKF, N.A.*, 2015 WL 2354386, at *3 (citing *Howard v. Youngman*, 81 S.W.3d 101, 118 (Mo. Ct. App. 2002); *Teefey v. Cleaves*, 73 S.W.3d 813, 818 (Mo. Ct. App. 2002)). Similarly, the focus of a wrongful garnishment claim is to show "'that the garnished property is [the plaintiff's] property'" and that the defendant "abuse[d] or misuse[d] the garnishment statute.'" *Stone v. J&m Sec., LLC*, No. 4:20 CV 352 SPM, 2020 WL 5909788, at *8 (E.D. Mo. Oct. 6, 2020) (quoting *Howard v. Frost Nat'l Bank*, 458 S.W.3d 849, 854 (Mo. App. E.D. 2015)). So regardless of whether Plaintiff ultimately has a meritorious garnishment claim (whether traditional or equitable), Counterclaim Plaintiff LM can pursue its abuse of process and wrongful garnishment claims without the bar of res judicata. *Id.* (citing *Moffett v. Commerce Trust Co.*, 283 S.W.2d 591, 599 (Mo. 1955) ("in an action for abuse of process it is unnecessary for the plaintiff to prove that the proceeding has terminated in his favor")).

Third, based on the discussion above, it is apparent that different evidence is required to prove/disprove the claims and counterclaims; for example, the counterclaims must present evidence of Plaintiff's alleged collateral purposes and alleged abuse or misuse of the garnishment statute, whereas the original claims must present evidence related to the insurance policy, the judgment in the underlying lawsuit, and Defendant LM's and Plaintiff's communications and financial interactions following the judgment. Finally, although it is a closer call, the logical

relation between the garnishment of LM for the amount of the underlying judgment and Plaintiff's alleged collateral purpose and abuse or misuse of the garnishment statues is not so close as to outweigh the potential issue of juror confusion if the abuse of process and wrongful garnishment counterclaims were to proceed to trial in this action.

In light of the foregoing, Defendant LM's abuse of process and wrongful garnishment counterclaims are permissive; therefore Plaintiff's "counterclaims" for bad faith and attachment may be allowed if they are compulsory, arising out of the same transaction or occurrence as LM's counterclaims for abuse of process and wrongful garnishment.

### 2. Plaintiff's Counterclaims to LM's Counterclaims are Permissive

Here, Plaintiff's counterclaims for bad faith and attachment do not arise out of the same transaction or occurrence that is the subject matter of Defendant LM's abuse of process and wrongful garnishment claims. First, the issues of fact and law raised by Defendant ML's abuse of process and wrongful garnishment claims and Plaintiff's bad faith and attachment counterclaims are not "largely the same." Plaintiff's bad faith and attachment counterclaims focus on LM's conduct and intent leading up to the underlying judgment while the subject matter of LM's abuse of process and wrongful garnishment claims focus on the prosecution of this action. Also the claims and counterclaims have different and dissimilar elements.

Second, res judicata would not bar subsequent claims for bad faith and attachment. "[A] bad faith refusal to settle action will lie when a liability insurer: (1) reserves the exclusive right to contest or settle any claim; (2) prohibits the insured from voluntarily assuming any liability or settling any claims without consent; and (3) is guilty of fraud or bad faith in refusing to settle a claim within the limits of the policy." *Scottsdale Ins. Co. v. Addison Ins. Co.*, 448 S.W.3d 818, 830 (Mo. 2014). Attachment may be had against the property of a defendant where, in relevant part here, the defendant is not a resident of this state or where the defendant is a corporation whose chief office or place of business is outside of Missouri, Mo. Rev. Stat. § 521.010(1) and (2), and a party requesting attachment must file an affidavit stating (1) "[t]he nature and amount of the claim," and (2) "[f]acts showing the existence of one or more of the grounds for attachment set forth in Section 521.010, RSMo." Mo. Sup. Ct. Rule 85.03; *accord* Mo. Rev. Stat. § 521.060 ("The affidavit . . . shall state that the plaintiff has a just demand against the defendant, and that the amount which the affiant believes the plaintiff ought to recover . . . is __ dollars, and that he

11

has good reason to believe, and does believe, in the existence of one or more of the causes which according to the provisions of section 521.010 would entitle the plaintiff to sue by attachment."). In contrast, "[t]he focus of an abuse of process claim is . . . that suit was initiated for some collateral purpose," *BOKF, N.A.*, 2015 WL 2354386, at *3, and the focus of a wrongful garnishment claim is to show plaintiff's ownership of the garnished property and defendant's "abuse or misuse of the garnishment statute." *Stone*, 2020 WL 5909788, at *8. So regardless of whether Defendant LM ultimately has a meritorious abuse of process or wrongful garnishment claim, Plaintiff can pursue her bad faith and attachment claims without the bar of res judicata.

Third, different evidence is required to prove/disprove the claims and counterclaims; for example, the counterclaims must present evidence of Plaintiff's alleged collateral purposes and alleged abuse or misuse of the garnishment statute, whereas the original claims must present evidence related to the insurance policy, the judgment in the underlying lawsuit, and Defendant LM's and Plaintiff's communications and financial interactions following the judgment. Finally, though by a narrower margin, the logical relation between the garnishment of LM for the amount of the underlying judgment and Plaintiff's alleged collateral purpose and abuse or misuse of the garnishment statues is not so solid as to outweigh the potential for juror confusion if the abuse of process and wrongful garnishment counterclaims were to proceed to trial in this case.

In light of the foregoing, Plaintiff's "counterclaims" for bad faith and attachment are permissive rather than compulsory, and accordingly, may not be brought as counterclaims to Defendant LM's counterclaims.

### ii. Plaintiff's Bad Faith Claim Fails

Assuming for the sake of argument Plaintiff was allowed to bring her counterclaims of bad faith and attachment, the Court finds Plaintiff's bad faith claim otherwise fails. Plaintiff never faced any personal liability for the actions of Defendant Brett Stiles, was never a party to the insurance contract, and has not been injured by any act or omission of Defendant LM.

Any tort claims arising from Defendant LM's contractual relationship with Defendant Brett Stiles belong to Defendant Brett Stiles. *See Am. Home Assur. Co. v. Pope*, 487 F.3d 590, 605 (8th Cir. 2007); *Doe IX v. Nat'l Union Fire Ins.. Co. of Pittsburgh, P.A.*, No. 6:18-CV-03283-BCW, 2018 WL 9920034, at *3 (W.D. Mo. Dec. 21, 2018) ("Because a claim for an insurance company's bad faith refusal to defend belongs to an insured, the only way a Missouri judgment creditor for an underlying tort claim could assert such a claim is through an assignment of rights."). "[A] bad

faith refusal to settle action falls within the category of assignable torts." *Scottsdale Ins. Co.*, 448 S.W.3d at 830. "Because a claim for bad faith refusal to settle belongs exclusively to the insured unless assigned to the injured third party," and because here there is no allegation that Defendant Stiles assigned any such claim to Plaintiff, "who is not a party to the insurance contract, Plaintiff [] cannot state facts sufficient to support a claim for bad faith failure to settle." *Carla v. Am. Mod. Select Ins. Co.*, No. 6:20-CV-03291, 2021 WL 495863, at *3 (W.D. Mo. Feb. 10, 2021). Therefore, even if Plaintiff could properly assert the bad-faith counterclaim, the claim would still fail because Plaintiff has not alleged the assignment of Defendant Stiles' bad faith failure to settle claim.

### iii. Plaintiff's Attachment Counterclaim

Finally, also assuming for the sake of argument that Plaintiff were allowed to bring her counterclaim of attachment, the Court finds Plaintiff's attachment claim would otherwise fail.

In Plaintiff's attachment counterclaim, she alleges Defendant LM "is liable to satisfy the entire judgment entered against Ms. Stiles in the underlying action, plus interest accruing thereon," and as such, under § 521.010(1) and (2), governing attachment where a defendant is not a resident of Missouri or the defendant is a corporation whose chief office or place of business is not in Missouri, LM's property is subject to attachment and payment to Plaintiff to satisfy the judgment "to the extent necessary to satisfy that liability." (Doc. 1-3 at ¶¶ 49-51.)

Defendant LM argues Plaintiff's attachment claim fails for several reasons. Defendant LM argues the claim fails because Defendant LM cannot be liable for the entire underlying judgment under a garnishment claim as such claim is limited to the policy amounts already tendered. Defendant LM argues the claim also fails because Defendant LM cannot be liable under a bad faith claim because Plaintiff has not been assigned any potential bad faith claim, which belongs to Defendant Stiles as the insured. Defendant LM also contends that the attachment claim is mooted under § 521.050 because Defendant LM has entered an appearance and answered and Plaintiff did not file (or allege filing) a bond within ten days of Defendant LM's appearance and answer. Finally, Defendant LM also asserts that Plaintiff failed to include the required affidavit under § 521.060 and Mo. Sup. Ct. Rule 85.03.

Rule 64 of the Federal Rules of Civil Procedure authorizes attachment under Missouri law in the context of a federal action. *See* Rule 64(a), (b). Under Missouri law, a plaintiff in a civil action "may, at any time pending the suit and before final judgment, sue out an attachment in such

13

action, on filing an affidavit and bond." Mo. Rev. Stat. § 521.130; *accord* Mo. Sup. Ct. Rule 85.02 ("After the commencement of a civil action a party who presents therein a claim by petition . . . may obtain a writ of attachment upon compliance with this Rule 85."). In relevant part, attachment may issue "[w]here the defendant is not a resident of this state;" and "[w]here the defendant is a corporation, whose chief office or place of business is out of this state." Mo. Rev. Stat. § 521.010(1) and (2).

The party requesting attachment must file an affidavit stating (1) "[t]he nature and amount of the claim," and (2) "[f]acts showing the existence of one or more of the grounds for attachment set forth in Section 521.010, RSMo." Mo. Sup. Ct. Rule 85.03; *accord* Mo. Rev. Stat. § 521.060 ("The affidavit . . . shall state that the plaintiff has a just demand against the defendant, and that the amount which the affiant believes the plaintiff ought to recover . . . is __ dollars, and that he has good reason to believe, and does believe, in the existence of one or more of the causes which according to the provisions of section 521.010 would entitle the plaintiff to sue by attachment."). Issuance of a writ of attachment is mandatory so long as these requirements are satisfied. Mo. Sup. Ct. Rule 85.04 ("If the court finds that the facts stated in the affidavit show that the writ of attachment should issue, the writ shall be issued upon compliance with Rule 85.08."); *see* Mo. Rev. Stat. § 521.030 ( "An affidavit alleging any one of the causes set forth in the several subdivisions of section 521.010, in the language of such subsection, shall be held good and sufficient.").

Missouri law requires strict compliance with the attachment provisions and will construe such provisions "'in favor of those against whom [the remedy] may be employed.'" *MEMC Elec. Materials, Inc. v. Sunlight Grp., Inc.*, No. 4:08CV535 FRB, 2010 WL 1936091, at *2 (E.D. Mo. May 12, 2010) (citation and quotation marks omitted) (second alteration in original); *accord State ex rel. Froidl v. Tillman*, 662 S.W.2d 907, 909 (Mo. Ct. App. 1983) ("Attachment proceedings in Missouri are special and extraordinary proceedings and the strict compliance with the statutory provisions is virtually essential. When such strict compliance has not been had, the writ of attachment will be irregular and the court acquires no jurisdiction over any res.") (citations omitted).

Here, Plaintiff has not alleged that she filed an affidavit in compliance with Missouri attachment law. Further, there is no indication that Plaintiff and Defendant Stiles have entered any settlement agreement or that Defendant Stiles has otherwise assigned any claim against Defendant

14

LM to Plaintiff, and thus there is nothing potentially owing to which Plaintiff may have otherwise been able to attach. Absent such agreement or assignment, Plaintiff also has no basis for a claim pursuant to § 379.200, which only allows a judgment creditor to "proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment" and not to recover amounts beyond "the insurance money," which there appears to be no dispute has already been tendered to Plaintiff.

For all these reasons, Plaintiff's attachment claim fails.

### III. Conclusion

Accordingly, and after careful consideration, the Court **ORDERS** as follows:

(1) Plaintiff's motion to remand (Doc. 8) is **DENIED**;

(2) Defendant Brett Stiles' motion to remand (Doc. 11) is **DENIED**;

(3) Plaintiff's claims against Defendant Stiles are **DISMISSED**;[1] and

(4) Defendant LM's motion to dismiss Plaintiff's counterclaims (Doc. 5) is **GRANTED**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: May 12, 2023

---

[1] *Block v. Toyota Motor Corp.*, 665 F.3d 944, 951 (8th Cir. 2011) (concluding that the district court did not abuse its discretion by denying the motion to remand and dismissing the fraudulently joined defendant before discovery); *Bohnenkamp v. Hog Slat, Inc.*, 549 F. Supp. 3d 937, 942 (N.D. Iowa 2021) (citing *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1031 (8th Cir. 2012), *as corrected* (Nov. 28, 2012) (upon finding non-diverse defendant was fraudulently joined, the court may disregard the non-diverse defendant's citizenship, dismiss it and retain jurisdiction over the case.)